UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-60242-SINGHAL/DAMIAN

UNITED STATES OF AMERICA

v.

TSVIA KOL,

　　Defendant.
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REOPEN DETENTION HEARING

Defendant Tsvia Kol ("Kol") ("the Defendant") has filed a motion to reopen the detention hearing based on newly obtained information that Israel will extradite its own citizens. The Government believes there is still ample basis for detention in the court's order and in her comments and findings during the detention hearing itself.

On December 2, 2022, Magistrate Judge Chris M. McAliley held a detention hearing for this case. Judge McAliley ordered the Defendant detained pending trial based on a serious risk of flight. 18 U.S.C. § 3142(f)(2); *see United States v. Medina*, 775 F.2d. 1398, 1402 (11th Cir. 1985) (Under the Bail Reform Act, *a preponderance of the evidence standard* applies to a determination that "no condition or combination of conditions will reasonably assure the safety of any other person and the community.") (emphasis added). In its order, the court cited a number of factors, including the strength of the evidence, the defendant would be subject to a lengthy period of incarceration if convicted, a history of substance abuse, lack of stable employment, significant family ties outside in Israel, and the Defendant being subject to removal or deportation after serving any period of incarceration (DE:11). At issue here, the court also notes Israel would not extradite the Defendant if she fled there. The Government and the court were mistaken on that

point and the Government agrees Israel will extradite in certain circumstances. Yet, the thrust of the court's reasoning reading its concerns of Kol's flight to Israel still stands. Finally, the other circumstances forming the basis of the court's decision remain unchanged.

## I.    BACKGROUND REGARDING THE INDICTED CONDUCT

In early November 2020, law enforcement seized a package destined for Coral Gables and conducted a dog sniff. This resulted in a positive alert for narcotics. Law enforcement then obtained a search warrant for the package and inside found approximately 1,321 grams of 93% pure methamphetamine. Law enforcement thereafter attempted a controlled delivery of the package after replacing the methamphetamine with "sham" drugs when a courier picked up the package. When approached by law enforcement, the courier told officers that she was merely the courier for the package and that she was supposed to meet with an Israeli woman known as "Sapir Kol," She then called KOL, who told the courier not to open the box and then discussed precisely where to meet in Hallandale Beach for the transfer.

Law enforcement surveillance thereafter witnessed the courier hand the package to Kol, who then placed the package with the sham meth on the driver's seat of her car. Law enforcement confronted Kol and she signed a written Miranda waiver and consents to search her car, phone, and residence – as she stated she had more drugs there. During the interview, she admitted to knowing the package contained three pounds of methamphetamine and gave additional details about her involvement with drug traffickers from Sinaloa, Mexico. Kol then provided consent to search her residence, where law enforcement found an additional 500 grams of methamphetamine in several baggies, pipes, and scales out in the open throughout the house. They also found dozens of fentanyl pills weighing approximately 58 grams in an open safe inside the single bedroom, as well as other drugs consistent with personal use, including several oxycodone pills, a bag of

mushrooms, and three MDMA pills scattered throughout the apartment

During the height of the COVID-19 Pandemic, FDC Miami was limiting who could be held there and grand juries were not meeting. Given this situation and Kol's cooperativeness and extensive connections, law enforcement decided to use Kol for proactive cooperation. Kol orally agreed to provide information on shipments and coconspirators to law enforcement and to stop engaging in illegal activity. Kol met with law enforcement in July 2021 and admitted to picking up a package of methamphetamine weighing approximately 15 pounds and distributing it to several co-conspirators without law enforcement approval – an original condition of their informal agreement. At that time, law enforcement discontinued contact with Kol. Ultimately, Kol was charged in November 2022 for her conduct between August and November 2020.

## II.     LEGAL STANDARD

The Court may reopen the bail hearing if "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue" of whether pretrial detention is warranted. 18 U.S.C. § 3142(f). But the Court is not required to reopen the hearing or to conduct another hearing if it determines that any new information would not have a material bearing on the issue. *See United States v. Raniere*, No. 18-CR-2041 (NGG) (VMS), 2018 WL 6344202, at *2 n.7 (E.D.N.Y. Dec. 5, 2018) (noting that "[a]s the court has already held one detention hearing, it need not hold another" the standards set forth in 18 U.S.C. § 3142(f)(2) are met); *United States v. Havens*, 487 F. Supp. 2d 335, 339 (W.D.N.Y. 2007) (electing not to reopen a detention hearing because the new information would not have changed the court's decision to detain the defendant until trial).

### III.   ARGUMENT

### A.  Extradition from Israel Is Never Guaranteed, and The Sentiment Behind the Court's Reasoning Stands

After additional consultation and reviewing Defense counsel's motion, the Government concedes both it and the Court were mistaken. The Department of Justice's Office of International Affairs (OIA), which is the lead part of the U.S. Government—along with the State Department—working on extradition matters, reports that pursuant to the bilateral Extradition Treaty and amending Protocol between the United States of America and the State of Israel, Israel will extradite Israeli nationals, assuming dual criminality and the satisfaction of the other requirements of the Treaty. However, extradition from Israel is never guaranteed and frequently can take many years.

Still, the transcript of the detention hearing reveals the court's specific concern regarding Israel's extradition policy, noting that defense could "explore a waiver of extradition *and the enforceability of it*" and could "bring the matter back." (DE:18:48) (emphasis added). But OIA has spoken with their Israeli counterparts and an anticipatory waiver of extradition has no legal effect. Defense has not shown otherwise, instead providing a letter that the Israeli consulate would inform the U.S. Government if Kol applied for a new document, which does not amount to a waiver of extradition or a guarantee for a swift extradition process. Moreover, this does not consider any alias or other method of flight she may use—which the court took into account, noting that Kol could make her way to Israel "even without a passport" (DE:18:46).

There are—at best— substantial legal questions regarding the legal weight of anticipatory extradition waivers and the enforceability of any anticipatory waiver of extradition. And the Defendant has not presented any authority where courts addressed the question of whether an

anticipatory waiver of extradition is enforceable.[1] On the other hand, some courts have expressly opined that such waivers are unenforceable. *See, e.g., United States v. Epstein*, 425 F. Supp. 3d 306, 325 (S.D.N.Y. 2019) (describing the "Defense proposal to give advance consent to extradition and waiver of extradition rights" as "an empty gesture."); *United States v. Morrison*, No. 16-MR-118, 2016 WL 7421924, at *4 (W.D.N.Y. Dec. 23, 2016) ("Although the defendants have signed a waiver of extradition, such a waiver may not become valid until an extradition request is pending in Canada and may be subject to withdrawal.")

In any event, extradition from Israel would be, at best, a difficult and lengthy process and, at worst, impossible. And the likelihood that the Defendant would be able to frustrate any extradition requests—even if she were correct that she would be unable to stop extradition entirely—weighs strongly in favor of detention.

**B. Even Still, the Court Cited Multiple Other Grounds For Kol's Detention and The Facts Supporting Those Grounds Remain Unchanged**

In reviewing Judge McAliley's detention order, the court cites multiple reasons for detention that have nothing to do with whether or not Israel extradites their own citizens (DE:11). The court also further contextualized her order at the hearing, noting the strength of the evidence and that Kol would be subject to a lengthy period of incarceration if convicted. Judge McAliley expanded on this point during the detention hearing "...at this point the odds are very high, and I think Ms. Kol would understand it, that she will be convicted and that she will be sentenced to a

---

[1] Although Kol may ultimately cite cases where defendants offered to waive extradition, the reasoning in those cases turned on other factors and the courts did not dwell on the enforceability of such waivers. *See, e.g., United States v. Cirillo*, No. 99-1514, 1999 WL 1456536, at *2 (3d Cir. July 13, 1999); *United States v. Salvagno*, 314 F. Supp. 2d 115, 119 (N.D.N.Y. 2004); *United States v. Karni*, 298 F. Supp. 2d 129, 132–33 (D.D.C. 2004); *United States v. Chen*, 820 F. Supp. 1205, 1212 (N.D. Cal. 1992). But in those cases, the courts included such waivers as one among several conditions of release, but they did not make any express determination that such waivers are *enforceable*.

period of incarceration of a number of years" (DE:18:46). Even when accounting for a hypothetical downward departure, she noted that the sentence "would still be measured in years." Defense counsel even agreed with Judge McAliley's thought process on this matter (*Id.*).

The Court further observed the Defendant's history and characteristics. In fact, when Judge McAliley began discussing her reasoning at the detention hearing, she did not first mention first pointed to Kol's inability to "keep her promise to cooperate with the government" (DE:Trancript:48). Judge McAliley also noted Kol's history of substance abuse, commenting that Kol's "…lack of judgment and…dependency on methamphetamine" did not give the court confidence that a promise not to encumber property—property that Kol herself did not even own— was sufficient motivation (DE:18:48). The court also cited Kol's lack of stable employment as a basis for her detention finding and that, as a legal permanent resident, Kol would be subject to removal or deportation after serving any period of incarceration. All of these factors provide generous grounds for detention under a risk of flight analysis.

## IV.    CONCLUSION

Based on the foregoing and the existing record, the Court should deny the Defendant's motion to reopen the detention hearing.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    _____
Alexandra D. Comolli
Assistant United States Attorney
Court ID No. A5502803
99 Northeast 4th Street
Miami, FL. 33132-2111
Tel: (305) 961-9040
Fax: (305) 536-4089
Alexandra.Comolli@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2023, the undersigned Assistant United States

Attorney electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

Respectfully submitted,

Alexandra D. Comolli
Assistant United States Attorney